NEW AMSTERDAM CASUALTY CO. *v.* MOSS.

1. Insurance—Principal and Agent—Workmen's Compensation—
Evidence.

Person who procured workmen's compensation insurance for de-
fendant in plaintiff company *held*, to have acted as agent of
plaintiff and not of defendant, where it appears such person
was in the general insurance business with relatives who had
an agency which had an agreement to act as agent for plain-
tiff in the placement of insurance for scheduled commissions.

2. Workmen's Compensation—Insurance—Other Business of
Employer—Fraud—Evidence.

In workmen's compensation insurance carrier's suit to enjoin
proceedings against it on a claim against employer who had
recently acquired a machine shop business and retained plain-
tiff as insurance carrier notwithstanding such employer had a
motor sales business located elsewhere in the county thereto-
fore covered by a different insurer, evidence, showing defend-
ant had not been asked, and made no statement, about any
business located elsewhere and that he was not aware of pro-
vision of statute requiring that all of an employer's activities
be insured by one carrier and policy not signed by defendant
and containing erroneous statement as to such other business
was delivered to defendant the second day before the accident
as to which plaintiff seeks to avoid liability, did not entitle
plaintiff to cancellation on the ground of fraud, either actual
or constructive, such erroneous statement apparently being
placed in policy as result of negligence of plaintiff's agent
(2 Comp. Laws 1929, §§ 8412, 8460).

3. Same—Insurance—Filing Acceptance of Risk—Substitution
of Carrier.

In suit by workmen's compensation insurer of machine shop pur-
chaser to enjoin proceedings against it to recover workmen's
compensation because defendant purchaser who was also the
owner of a motor sales business located elsewhere in the county
was there insured by another carrier, plaintiff's policy which
was issued later and covered only the machine shop where

employee was injured *held*, to have been substituted for other insurance as to defendant's risks where plaintiff's acceptance of the risk was filed with the department before the accident occurred (2 Comp. Laws 1929, §§ 8412, 8460).

4. SAME—SUBSTITUTION OF INSURANCE—CANCELLATION OF EARLIER POLICY.

It is not a requisite incident to the substitution of a new policy of workmen's compensation insurance for one already covering a risk that there should be notice of cancellation of the earlier policy (2 Comp. Laws 1929, §§ 8412, 8460).

5. SAME—SUBSTITUTION OF INSURERS—INTENT.

The act of an employer in effectuating a change of workmen's compensation insurance shows an intent to substitute a subsequent insurer for an earlier insurer (2 Comp. Laws 1929, § 8412).

6. SAME—INSURANCE—INTENT.

Since workmen's compensation insurance or some other financial responsibility which is required of each employer subject to the workmen's compensation act is primarily for the benefit and protection of employees, the matter of ''intent'' or meeting of the minds cannot be applied in like manner as to ordinary contracts between individuals (2 Comp. Laws 1929, § 8412).

7. SAME—EMPLOYER WITH TWO ACTIVITIES—SUBSTITUTION OF INSURER—INTENT.

Employer engaged in motor sales business covered by one workmen's compensation insurer, who acquired a machine shop elsewhere in the county and continued the plaintiff as insurer for the latter place of business which had theretofore had the risk, thereby substituted plaintiff as insurance carrier irrespective of the matter of ''intent,'' hence plaintiff which had filed acceptance of risk on machine shop was the sole insurer liable for payments of compensation for injury thereafter occurring to machine shop employee for duration of its policy (2 Comp. Laws 1929, §§ 8412, 8460).

8. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PARTIES—WORKMEN'S COMPENSATION.

In suit by workmen's compensation insurer to avoid liability under policy, questions as to propriety of deciding whether it was liable on policy or whether another insurance carrier with whom defendant had been insured was a necessary party, not having been raised on appeal, are not passed upon.

9. INJUNCTION—QUESTIONS REVIEWABLE—SUBSTITUTION OF WORK-MEN'S COMPENSATION INSURER.

Determination in suit to enjoin imposition of liability upon plaintiff workmen's compensation insurer as to whether or not it had been substituted as carrier for defendant employer *held*, not affected by such matters as payment or nonpayment of premiums on respective policies or that defendant's agent sought to obtain a rebate on the premiums (2 Comp. Laws 1929, §§ 8412, 8460).

Appeal from Ingham; Carr (Leland W.), J. Submitted June 12, 1945. (Docket No. 11, Calendar No. 42,912.) Decided October 8, 1945.

Bill by New Amsterdam Casualty Company, a foreign corporation, against Earle R. Moss and others to cancel a workmen's compensation insurance policy. Cross bill by defendant Moss against plaintiff for decree that said insurance policy was in effect on April 25, 1942. Decree for plaintiff. Defendant Moss appeals. Reversed and decree entered in this court to conform to prayer of cross bill.

*Mason, Davidson & Mansfield* and *Walter A. Mansfield,* for plaintiff.

*Alexander, McCaslin, Cholette & Buchanan,* for defendant.

NORTH, J. By a bill in chancery plaintiff seeks cancellation of a compensation insurance policy issued to defendant Moss, and thereby to save itself from possible liability incident to an accidental injury suffered by Frank Aldrich who was an employee of Moss. The defendants other than Moss filed a disclaimer and therefore are not concerned in the outcome of this litigation. Defendant Moss filed a cross bill and seeks to have plaintiff insurance company decreed liable as his insurer for com-

pensation awarded to his employees. The relief sought by plaintiff was decreed. Earle R. Moss, designated as defendant herein, has appealed.

Frank Aldrich instituted proceedings before the department of labor and industry for compensation. Notice of his application was given to Plymouth Machine Products Company and the Plymouth Machine & Caster Company. The Plymouth Machine & Caster Company was the name under which the former partnership owner had conducted this business at Plymouth, but after its purchase by Moss he carried on this business as the Plymouth Machine Products Company. The Plymouth Machine & Caster Company and the New Amsterdam Casualty Company by petition caused Moss and the Phoenix Indemnity Company to be added as parties defendant in the compensation proceedings. In the main the issue in the compensation proceedings was which of the two insurance companies should be held liable for any compensation that might be awarded to Aldrich. The deputy found Aldrich was entitled to an award of compensation as against Moss and the Phoenix Indemnity Company. Thereupon the Phoenix Indemnity Company sought review by the department, and at this point plaintiff, the New Amsterdam Casualty Company, filed its bill of complaint in the instant case, and incident to other relief sought and obtained a temporary injunction restraining further proceedings against it in the compensation case.

Decision herein must be made under the applicable provisions of the workmen's compensation act as it existed prior to the 1943 amendment. Since 1938, Moss, doing business in Detroit as the Earle Motor Sales, had carried his workmen's compensation insurance in the Phoenix Indemnity Company. The annual renewal of this insurance had not expired

at the time of Aldrich's accidental injury, April 25, 1942. At the time the Phoenix Indemnity Company insurance first became effective and thereafter Moss was engaged in business as an automobile dealer in Detroit under the name of Earle Motor Sales; and the Phoenix standard form of policy by its express terms and per force of statute (2 Comp. Laws 1929, § 8412 [Stat. Ann. § 17.146]) covered "all the businesses the said employer (Moss) is engaged in at the time of the issuance of this contract or policy and all other businesses, if any, said employer may engage in during the life thereof." On April 13, 1942 (12 days before the Aldrich accident), Moss purchased from a partnership a machine shop business operated as the Plymouth Machine & Caster Company in Plymouth, Michigan. He later carried on this business as the Plymouth Machine Products Company. Aldrich was working in the Plymouth plant when injured. At the time of purchase of the Plymouth business Moss applied to one Daniel Stowe for compensation insurance, evidently intending such insurance should cover the compensation risk of the Plymouth business. Stowe was an insurance agent or broker, and as such had secured the compensation insurance in the New Amsterdam Company for the partnership which carried on the business of the Plymouth Machine & Caster Company before that business was purchased by Moss. At the time negotiations were pending with Stowe for insurance in the New Amsterdam Company neither Moss nor his representative was asked whether Moss was carrying any other compensation insurance, nor did Moss or his brother, who was acting for him, advise Stowe that the Phoenix Indemnity Company was already carrying such compensation for Moss. The New Amsterdam Company through Stowe issued a new policy of compensation

insurance to "Earle R. Moss d/b/a Plymouth Machine & Caster Company" effective April 13, 1942, to April 13, 1943. The insurance agent, Daniel Stowe, personally delivered this policy to Moss April 23, 1942. The insurer's certificate and Moss' acceptance were filed with and received by the department of labor and industry April 24, 1942, and the acceptance approved by the department on that date, which was the day before the Aldrich accident. Later the New Amsterdam Casualty Company gave the department of labor and industry notice of termination of its liability effective April 13, 1942, on its earlier policy which had been issued to the partnership from which Moss purchased the Plymouth Machine & Caster Company. This notice bears plaintiff's notation: "Coverage rewritten effective April 13, 1942, under: 'Earle R. Moss, d/b/a Plymouth Machine & Caster Company.'" On April 30, 1942, the New Amsterdam Casualty Company also notified the department of labor and industry of the termination of its liability as of May 11, 1942, on the policy it had issued to Moss, d/b/a Plymouth Machine & Caster Company.

Plaintiff in this chancery proceeding asserts that it is entitled to relief by way of cancellation of its policy for the following reasons: (1) that since the Phoenix Indemnity Company's policy was in force and covered all of the liability of Moss for compensation at the time plaintiff issued its policy, the department of labor and industry had no jurisdiction to approve the subsequent acceptance of Moss or to receive and file plaintiff's certificate of acceptance of the risk, (2) that plaintiff's policy was issued in consequence of actual or constructive fraud on the part of Moss in that he did not inform plaintiff that he was already covered by the Phoenix Indemnity policy, and (3) that plaintiff's policy should be can-

celled because of a mistake in issuing the same in that the insurer was not advised and did not know the actual scope of the risk as including other business of Moss aside from that of the Plymouth Machine & Caster Company. As hereinbefore noted, the circuit judge granted cancellation sought by plaintiff, but solely on the ground of mistake. He found there was no fraud. The grounds urged by defendant in support of this appeal are: (1) that the decree was against the evidence, (2) that the decree was against the law, and (3) that under the evidence presented the New Amsterdam Casualty Company should have been held the insurer covering the risk.

Notwithstanding plaintiff's contention to the contrary, we find, as did the trial judge, that incident to the transactions involved in this litigation Daniel Stowe acted as the agent of plaintiff company, not as the agent of Earle R. Moss. Exhibit 13 discloses an agreement between the New Amsterdam Casualty Company and Stowe & Company of Detroit wherein the latter is "hereinafter called the agent;" and such agent by the terms of the agreement as to Detroit and vicinity was authorized "to solicit and submit applications for the classes of insurance and fidelity and surety bonds for which a commission is specified in the schedule of commission allowances below; to issue and deliver policies, * * * which the company may, from time to time, authorize to be issued and delivered; to collect and receipt for premiums thereon or therefor; to cancel such policies and bonds in the discretion of the agent where cancellation is legally possible; and to retain out of premiums collected * * * as full compensation on business placed with the company by or through the agent, commissions at the following rates." We deem it unnecessary to refer to other

phases of the record which beyond question establish as a fact that Daniel Stowe, who testified that he was "in the general insurance business under name of Stowe & Company, which consisted of my father, Fred Stowe, and myself," was the agent of plaintiff insurance company.

Nor are we in accord with plaintiff's contention that the policy which it seeks to have cancelled was issued as the result of a fraud, either actual or constructive, perpetrated by defendant upon plaintiff or because of a mistake in that at the time of issuing the policy plaintiff did not know that Moss was engaged in another line of business and already protected by the compensation insurance policy issued by the Phoenix Indemnity Company.

As to the matter of the alleged fraud the undisputed record is that plaintiff's agent made no inquiry whatever at the time of negotiating for and issuing the policy in suit as to whether Moss was engaged in another business and already had issued in his behalf a compensation insurance policy, nor did Moss or anyone in his behalf make any statement to plaintiff's agent concerning these matters. Of course Moss knew the facts concerning these matters but it is a fair conclusion from this record that he was not aware of the provision in the statute (2 Comp. Laws 1929, § 8412 [Stat. Ann. § 17.146]) which in effect prevented him from having the risk incident to one of his activities carried by one insurer and his risk incident to another activity carried by a different insurer. However, that was a matter of law, not of fact. Plaintiff in connection with his claim of fraud stresses the fact that in item 3 of the declaration which is made a part of plaintiff's policy it is stated: "Locations of all factories, shops, yards, buildings, premises or other

work places of this employer" were at the Plymouth site and "elsewhere in the State of Michigan;" but in the same declaration in item 5 it is recited: "This employer is conducting no other business operations at this or any other location not herein disclosed." In other words, Moss did not disclose to plaintiff's agent that he was then conducting another business (the Earle Motor Sales) or that he already had another policy which covered his compensation risk in his business. But it is worthy of note that this recital as to the extent of defendant's business first appears in the policy drafted by and delivered to defendant by plaintiff's agent. There is no testimony that it was contained in any prior written application signed by defendant or his brother, who acted in defendant's behalf incident to securing this insurance. Neither of them signed the policy or the declaration contained therein. Moreover the policy itself was not delivered to defendant until the second day before the accident. And it is not established by the testimony that Moss even knew prior to the Aldrich accident that there was this erroneous recital in the policy which is rather long and complicated. The erroneous statement evidently got into the policy through the neglect or carelessness of plaintiff's own agent who prepared the policy. Notwithstanding plaintiff issued its policy without having first acquired full knowledge as to the extent or character of defendant's business or the number of his employees, its own carelessness or that of its agent in that respect does not afford a ground for equitable relief. As noted above, plaintiff's agent made no inquiry in this respect nor did Moss or anyone in his behalf make any misrepresentation relative thereto or conceal the fact with intent to deceive

plaintiff. This record does not disclose either fraud or such a mistake of fact as would entitle plaintiff to cancellation.

The novel factual aspect of this case is that at the time of the accident Moss, the employer, was carrying two policies of insurance, either of which, were it not for the existence of the other, would have covered the risk. Plaintiff's contention is that under the statutory provision that the employer "shall insure all his liability in all of his businesses in one and the same insurance company or organization," the department of labor and industry was without power to accept a second insurer while a prior insurer's policy covering the risk was in force. On the other hand, defendant contends that under the facts of the instant case it should be held that the filing of plaintiff's certificate of acceptance of the risk with the department of labor and industry and the department's approval of the employer's acceptance of the compensation act resulted in a substitution of plaintiff's policy for the earlier Phoenix policy and thereafter the compensation risk in all of Moss's businesses was covered by the New Amsterdam Casualty Company.

We conclude that defendant is correct in contending that there was a substitution of the New Amsterdam policy for the Phoenix policy prior to the accident which happened April 25, 1942. Plaintiff's policy, which specifically covered the business in which Aldrich was injured (as well as all other business in which Moss was engaged) recited it was effective April 13, 1942, and was delivered by plaintiff's agent to the insured April 23, 1942. Plaintiff's certificate of acceptance of the risk together with Moss's acceptance of the compensation act was mailed by plaintiff insurance company to the department of labor and industry under date of April

23, 1942. Plaintiff's certificate of acceptance of this risk was received and filed by the department of labor and industry April 24, 1942, and on the same date the employer's acceptance of the compensation act was approved by the department. This was the day before Aldrich sustained his accidental injury. Obviously, on the day of the accident plaintiff insurance company was on the risk. That such was the understanding and construed to be the fact by the plaintiff insurance company is quite convincingly disclosed by its letter to the department of labor and industry dated April 30, 1942, which in part reads:

> "In re: Earle R. Moss, d/b/a Plymouth Machine
> & Caster Co., 12401 Diana Lane, Livonia
> Township, Plymouth, Michigan
>
> "You are hereby notified that the undersigned, the insurance company carrying the workmen's compensation insurance on the above-named employer has terminated its liability to be effective May 11, 1942."

In holding that plaintiff's acceptance was filed with the department April 24th, we are mindful that later (April 27th) the department wrote plaintiff insurance company concerning its certificate of acceptance filed April 24th, as follows: "If the new certificate (the one filed April 24th) is to replace the old one (that formerly filed for the partnership which sold the Plymouth business to Moss), may we have a notice of termination of liability in the old name or if this is a separate entity will you so advise." In reply plaintiff wrote the department that its former policy, issued to the partnership, had been terminated as of April 13, 1942; and that: "Coverage rewritten effective April 13, 1942, under: 'Earle R. Moss, d/b/a Plymouth Machine & Caster

Company.' ", Surely this incident did not defer the date of plaintiff's acceptance of the risk. Instead it confirms, subsequent to the Aldrich accident, plaintiff's acceptance filed with the department on April 24th.

It is not a requisite incident to the substitution of a new policy for one already covering the risk that there should be notice of cancellation of the earlier policy. *Gratopp* v. *Carde Stamping & Tool Co.*, 216 Mich. 355. So in the instant case plaintiff's liability was not affected by the fact that there was no notice of cancellation of the Phoenix policy filed with the department prior to the Aldrich accident. It does not follow, as plaintiff contends, that so to hold is to permit a violation of the statute (2 Comp. Laws 1929, § 8412 [Stat. Ann. § 17.146]) which requires an employer to "insure all his liability in all of his businesses in one and the same insurance company or organization." Instead the new policy when substituted for the former policy does just what the statute required, *i.e.*, it covers the risk in all the businesses in which the insured is engaged. In fact, plaintiff's policy issued to Moss expressly provides "that all of the provisions of each workmen's compensation law covered hereby shall be and remain a part of this contract," and the statute requires that every compensation policy shall include the provision that it covers "all of the businesses the said employer is engaged in at the time of the issuance of this contract or policy." 2 Comp. Laws 1929, § 8460 (Stat. Ann. § 17.195).

It is of no consequence as affecting plaintiff's liability that at the time it issued its policy to Moss it had no knowledge of the fact that he was also doing business as the Earle Motor Sales and was carrying compensation insurance in the Phoenix In-

demnity Company. Nor may plaintiff escape liability in consequence of one of its representatives having testified it would not have issued its policy to Moss had it known of the Earle Motor Sales business. While we do not consider it as having any material bearing on decision of the instant case, it may be noted that the business of the Earle Motor Sales had no connection with the Aldrich accident. He was injured while working in the Plymouth business, which was the specific risk plaintiff insurer covered by its policy.

There is no need to disagree with plaintiff's contention that since Moss was conducting two separate businesses—the Earle Motor Sales in Detroit and the Plymouth Machine & Caster Company at Plymouth, and already had one insurance covering the Earle Motor Sales business, he could not by a second insurer cover the compensation risk of the Plymouth business, separate from the Earle Motor Sales risk. See *Gratopp* v. *Carde Stamping & Tool Co., supra.* But that was not what was accomplished in the instant case. Instead, Moss (under an assumed name) was personally engaged in each of these businesses. He was the sole employer. As before noted, by statute (2 Comp. Laws 1929, § 8412 [Stat. Ann. § 17.146]) Moss was required, while under the workmen's compensation act, to cover the compensation risk in both his businesses by insurance "in one and the same insurance company." Instead of notifying the Phoenix Indemnity Company of his newly-acquired business (as his insurance policy required), Moss took out a new policy in plaintiff company and by the timely filing of proper certificates of acceptance with the department of labor and industry, plaintiff's policy supplanted the earlier Phoenix policy. This is true in spite of the fact that Moss

did not understand the legal effect of his obtaining a second policy from plaintiff insurer. We are quite in accord with the following statement made by plaintiff in its brief:

"The very act of the employer in effectuating the change of insurance shows the intent to substitute a subsequent insurer for an earlier insurer."

Considerable consideration in the briefs has been devoted to the question of "intent." For example, it is asserted by plaintiff that neither Moss nor the New Amsterdam Casualty Company ever intended that the latter's policy covered the compensation risk in the Earle Motor Sales. On the other hand, it is suggested in defendant's brief that neither Moss nor the Phoenix Indemnity Company ever intended that the Phoenix policy covered the compensation risk of the Plymouth Machine & Caster Company. But it should be noted that this type of insurance (or other financial responsibility) is required by the statute of each employer who elects to go under the workmen's compensation act; and that such requirement is primarily for the benefit and protection of employees. Hence as to such insurance contracts the matter of "intent" or meeting of minds cannot be applied in like manner as to ordinary contracts between individuals. Instead, the statute requires such insurance and fixes the conditions of liability. To hold otherwise in ordinary workmen's compensation cases would greatly jeopardize the rights of employees for whose benefit insurance is required by law. That "intent" does not control is evidenced by such of our decisions as that in *Zielke* v. *A. J. Marshall Co.*, 306 Mich. 474. In that case one of defendant's employees sustained a compensable accident September 30, 1940. Prior to the date of the injury defendant's compensation insurance was

being carried by the General Accident Assurance Corporation. Its policy was for the term of one year expiring September 27, 1940, and it received from defendant the premium for the year expiring on that date, but for no additional term. On the date of the expiration of the policy the insurer filed with the department notice of termination of its policy, but under the statute (2 Comp. Laws 1929, § 8460, subd. [f] [Stat. Ann. § 17.195 (f)]) its policy continued in effect until 10 days after notice of termination was received by the department, or until October 7, 1940, "if there was no other insurer on the risk for that period." Prior to the date of the accident and on September 27, 1940, the Lumbermen's Mutual Casualty Company issued to the employer its policy effective as of that date and received a premium from that time on. But the Lumbermen's Mutual did not file its certificate of coverage with the department of labor and industry until October 3, 1940. This was after the accident. In defendant's report of the accident it named as its insurer the Lumbermen's Mutual whose policy defendant had received before the accident. As to the matter of "intent" it quite conclusively appears that on the date of the accident the defendant employer thought and intended that the Lumbermen's Mutual was on the risk; and obviously that company intended to be on the risk at that time because it had previously delivered its policy effective as of September 27th to the employer and received the premium therefor. On the other hand, it seems a necessary inference that the General Accident Assurance Corporation, having given its notice of cancellation prior to the accident and the employer having taken out new insurance in another company, understood and intended that it was not thereafter and at the time of the accident still on defendant's risk. Notwithstand-

ing such "intent" on the part of the insured and both insurers, it was held that the General Accident Assurance Corporation was liable, because the Lumbermen's Mutual had not yet filed its acceptance of the risk with the department of labor and industry at the time of the accident. Obviously it cannot be said that "intent" is controlling in this type of cases.

Even if "intent" were to be considered as having some bearing upon decision, it should be noted that in the instant case the insured (Moss) understood and intended that at the time of the accident here involved the compensation risk was being carried by the New Amsterdam Casualty Company. In the report to the department of the accident here involved the employer named the New Amsterdam Casualty Company as the insurance company carrying the risk, thus indicating the employer's understanding or intent. While we do not have before us Aldrich's petition to the department for adjustment of compensation, it quite conclusively appears, otherwise from the record that this injured employee also understood the risk at the time of the accident was being carried by the New Amsterdam Casualty Company, and that company appeared in the compensation proceedings. Further, whatever may have been the intent of the New Amsterdam Casualty Company, it cannot now escape liability by asserting such intent, knowledge of which at the time it issued its policy was not conveyed to Moss, the insured. Moreover, by the express terms of the New Amsterdam policy (and as a matter of law) it is provided: "It is agreed that all the provisions of each workmen's compensation law covered hereby shall be and remain a part of this contract as fully and completely as if written herein." The applicable provision in the workmen's compensation act (2 Comp. Laws 1929, § 8460 [Stat. Ann. § 17.195])

is that every compensation policy shall contain the following provision: ''That this insurance contract or policy shall for all the purposes be held and deemed to cover all the businesses the said employer is engaged in at the time of the issuance of this contract or policy and all other businesses, if any, said employer may engage in during the life thereof, and all employees the said employer may employ in any of his businesses during the period covered by this policy.'' So it cannot be said in the instant case that the matter of ''intent'' is controlling in plaintiff's favor.

Since neither question is raised on this appeal, we do not herein pass upon the propriety of adjudicating in equity the controlling issue presented in the instant case; nor upon the necessity of the Phoenix Indemnity Company being a party to this litigation. It appears from the original file defendant's motion in the circuit court to dismiss the bill of complaint on the ground that the Phoenix Indemnity Company was a necessary party was denied. No complaint of that ruling is made on this appeal. Consideration has been given the other phases of this case noted in the briefs, such as payment or nonpayment of premiums on the respective policies hereinbefore mentioned; also as to plaintiff's claim that at the time the New Amsterdam Casualty Company issued its policy to Moss, his brother, who was acting for Moss, sought to obtain a rebate on the premiums. However, we have concluded that decision herein is not affected by any of the above matters.

The decree entered in the circuit court is reversed and the injunctive relief granted set aside. A decree will be entered in this Court granting the relief sought in defendant's cross bill as follows: ''That a decree may be entered by this court to the effect that on April 25, 1942, New Amsterdam Casualty

Company was the sole and only compensation insurer for Earle R. Moss and liable as such insurer for all the obligations imposed by the workmen's compensation law in favor of employees of the said Earle R. Moss," during the time plaintiff's policy remained in effect. Defendant Moss will have costs of both courts.

STARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.