## Koch v. Boalsburg Water Co.

*Robert C. Haberstroh* and *William W. Litke*, for appellant.

*Penrose Hertzler* and *John R. Miller*, for appellee.

CAMPBELL, P. J., July 6, 1960.—Claimant is the widow of Fred G. Koch, who died as the result of an accident on December 21, 1955, while an employe of the Boalsburg Water Company, defendant. The parties involved in this action, in addition to claimant and defendant, are the Selected Risks Insurance Company, hereinafter called "Selected Risks," and the Indemnity Insurance Company of North America, hereinafter called "Indemnity."

No witnesses appeared before the referee. The facts were stipulated by the parties. We quote the material facts from the stipulation as follows:

"1. That the Selected Risks Insurance Company was the insurance carrier of the Boalsburg Water Company for upwards of 19 years; that the Indemnity Insurance Company of North America issued a policy covering the Boalsburg Water Company on October 7, 1955, and that said policy was cancelled on April 12, 1956, effective as of October 7, 1955, for the reason that it provided duplicate coverage; that the Selected Risks Insurance Company, as a matter of policy, regularly cancels its policy upon learning that another carrier has issued a policy on the risk but did not do so in this instance because the accident occurred prior to being informed that the Indemnity Insurance Company of North America had issued its policy covering the risk."

"2. That prior to the time either insurance company was advised of the double coverage, an accident occurred to Fred G. Koch on December 17, 1955, as the result of which he died on December 21, 1955; and timely notice was given to the employer."

"7. The two questions here involved is as to whether the claimant is entitled to compensation and if so, the respective liabilities of the insurance companies."

The omitted portions of the stipulation pertain to facts which were necessary to determine whether claimant was entitled to compensation. The referee awarded compensation to claimant and determined that Indemnity was liable for the payments. The issue as to whether claimant should recover was contested both before the referee and the Workmen's Compensation Board and was one of the exceptions noted in the appeal of Indemnity, but prior to argument in this court, this exception was dropped, and the court was advised by appellant, Indemnity, that it had paid

claimant the amount of the award due at the time appeal was argued. This leaves for the disposition of this court only one substantive legal question to be decided: Where double workmen's compensation insurance coverage exists at the time a claim arises, which company is liable for paying the compensation benefits?

Before a decision is made on the above substantive question of law, it is necessary to dispose of a motion to quash the appeal of Indemnity from the Workmen's Compensation Board. The motion was filed by Selected Risks.

With respect to the motion to quash, the following facts appear in the record. The decision of the board was dated December 16, 1959. On January 4, 1960, Indemnity filed its appeal in this court. The attorney for claimant accepted service on January 5, 1960. On January 28, 1960, Selected Risks filed its motion to quash appeal and rule to show cause, which instrument was sworn to on January 26, 1960, dated January 27, 1960,* and this court signed the rule to show cause on January 28, 1960. Indemnity filed no answer to the rule to show cause why the appeal should not be quashed, virtually admitting that no notice of the appeal as such was served on Selected Risks.

While technically not a part of the record, counsel for Indemnity mailed to the court by letter dated January 25, 1960, a petition for a rehearing, under section 426 of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, as amended, 77 PS §874, directed to the Workmen's Compensation Board,

---

* It is apparent that the petition, although sworn to by the attorney for Selected Risks on January 26, 1960, in Pottsville, Schuylkill County, was blank when it was mailed to local counsel, John R. Miller, Esq., in Bellefonte, and that the date of January 27, 1960, was inserted by him prior to the court's signing the rule on January 28, 1960.

which petition was dated and sworn to on January 25, 1960, and contained as paragraph 5 thereof the following:

"That subsequent to the entry of said opinion and order by your Honorable Board, an appeal was interposed by the Indemnity Insurance Company of North America to the Court of Common Pleas of Centre County, Pennsylvania to No. 229 January Term, 1960, and said appeal has not yet been heard by the Court of Common Pleas of Centre County, Pennsylvania, and has not been disposed of by said Court and is still pending, although the matter has been fixed for hearing before the said Court for Monday, the 15th day of February, 1960, at ten o'clock, P.M."

The correspondence received by this court indicates that a copy of said petition was mailed on January 25th from Altoona to the attorney for Selected Risks at Pottsville, Pa.

This court filed an opinion on March 8, 1960, deferring its decision on the motion to quash the appeal until such time as the Workmen's Compensation Board acted upon the petition for rehearing. This the board did on April 27, 1960, by denying the petition for rehearing. The matter is now before this court for determination.

Section 427 of The Pennsylvania Workmen's Compensation Act, June 21, 1939, 77 PS §874, as amended, provides, inter alia, as follows:

"The party taking the appeal shall, at the time of taking the appeal, serve upon the adverse party a written notice thereof, setting forth the date of the appeal and the court in which the same is filed, . . ."

It is abundantly clear that Selected Risks is an adverse party within the meaning of this statute as it is interested in upholding the decision from which the appeal is taken: Moseman v. Arundel Corporation, 156

Pa. Superior Ct. 318; Bankes v. Bankes, 11 D. & C. 102; Coady v. Crew-Levick Co., 27 D. & C. 142; Brezak v. Duryea Anthracite Coal Co., 2 D. & C. 2d 41.

Did appellant comply with the act by serving written notice of the appeal at the time it was taken, setting forth the date thereof and the court in which it was filed? We think it did not. The ground rules to govern a court in deciding this question are about as definite as next week's weather forecast. Prior to the decision of the Superior Court in the case of Stankiewicz v. Heights Construction and Supply Company, 95 Pa. Superior Ct. 215 (1929), a large number of common pleas courts held that where no written notice was served on the adverse party, furnishing the information called for in the act, the appeal was stricken off. The theory of these decisions was that the appeal was a statutory creation and that the provisions of the act must be strictly complied with. See Skinner Workmen's Compensation, 4th Ed., page 839, and numerous cases therein cited. The Stankiewicz case held that the provisions of section 427 of The Workmen's Compensation Act, as amended, are not mandatory, that a literal compliance "is not possible or required" and that the words "at the time of taking an appeal" mean "within a reasonable time after taking the appeal." We further take the decision to mean that it would be possible to serve notice of the appeal any time before steps to quash the appeal have been filed and even after a motion to quash has been made, the court could in proper cases grant relief by refusing to quash the appeal. This decision makes the determination of this case about as easy to decide as the question of how bad a person must feel before he may be declared sick. We concur with the author of Skinner's Workmen's Compensation Law, supra, that the Stankiewicz case ought not to be extended beyond its own facts where, in the answer filed to the motion to

quash, it was averred that appellee had due and proper knowledge of the appeal immediately subsequent to the perfection of the appeal and that written notice was given of the appeal on the same day upon which the motion was filed to quash the appeal. It is difficult to justify the conclusion reached in the Stankiewicz case in light of a later decision of the same court in Walatka v. Levin, 100 Pa. Superior Ct. 489 (1930), which held that it was mandatory to appeal within the 20-day period and that the court had no authority to extend the time for taking the appeal unless the petition for extension is filed within the statutory period. There is further reason to limit the applicability of the Stankiewicz case by reason of the subsequent reënactment of section 427 by the legislature in identical language four separate times, the latest being the Act of May 27, 1943, P. L. 691. We would agree that a motion to quash should not be made absolute where extenuating circumstances appear, as for example, where actual notice was given but never received (Brumbaugh v. State Workmen's Insurance Fund, 142 Pa. Superior Ct. 550 (1940)) but such is not the case here.

Written notice of the appeal must be given to the adverse party or the appeal will be invalid: Hager v. Norristown Magnesia Asbestos Co., 82 Pa. Superior Ct. 349 (1923) ; Coady v. Crew-Levick, supra; Brezak v. Duryea Anthracite Coal Co., supra.

In the instant case no answer was filed to the motion to quash which alleged no notice under the act. The actual record is devoid of any notice whatsoever pursuant to the provisions of the act. Appellant, Indemnity, argues that Selected Risks had knowledge of the appeal when its counsel received a copy of a petition directed to the Workmen's Compensation Board for a rehearing, which petition for rehearing contained, among other averments, paragraph 5 quoted above, which indicated that an appeal had been taken in the

court of common pleas but did not set forth the date of the appeal. This letter was mailed on January 25, 1960, 21 days after the appeal had been taken, and before it was received steps had been taken to quash the appeal by the preparation of the motion which was filed on January 28, 1960. We do not believe The Workmen's Compensation Act intended that an adverse party should have to find out from the grapevine as to whether or not an appeal has been taken or to peruse a legal document addressed to another party in the case in order to discover whether or not an appeal has been taken. This we believe to be especially true when the affected parties are both insurance carriers represented by able counsel. Furthermore, appellant has the burden of showing compliance with the act which in this case it has not done. We would, therefore, quash the appeal.

A feeling of futility always accompanies the decision of a case on technical grounds. With full knowledge that there is no necessity to proceed further we shall, however, in the interests of justice, dispose now of the substantive question of law, to wit: Which of two insurance carriers are liable to pay claimant where each had issued a policy covering the period in which a claim arose and of which neither company had knowledge prior to the origin of the claim?

Double coverage is not permitted in Pennsylvania. Authority for this Hornbook Law is apparently the Act of May 17, 1921, P. L. 682, art. VI, sec. 651, as amended, 40 PS §811, which provides that:

"Every policy of insurance against liability under the Workmen's Compensation Act . . . shall contain the agreement of the insurer to pay *all* compensation . . . which the insured employer may become liable under such acts . . ."

Section 653 of said act, 40 PS §813, provides:

"No policy of insurance against liability under the Workmen's Compensation Act. . . shall contain any limitation of the liability of the insurer to an amount less than that for which the insured employer may become liable under *such acts* during the term of such insurance. . . ."

The Workmen's Compensation Board aptly stated that the board cannot be a Solomon and decree that two carriers be jointly liable. This was attempted by the referee in the case of Eldridge v. Blue Ridge Textile Co., Inc., 160 Pa. Superior Ct. 578, which action the board properly reversed. It seems plain, therefore, that the two insurance carriers cannot both be liable and each pay a proportionate part of the claim. The terms of the policies issued pursuant to the aforesaid statutory provisions contain similar prohibitions.

The board has jurisdiction to determine the general question of the liability of an insurer under the policy and whether the policy is in force or has been cancelled: Levan v. Pottstown, Phoenixville Ry. Co., 279 Pa. 381. It is proper to bring several alleged carriers on the record to determine their respective liability: Healey v. Carey, Baxter & Kennedy, Inc., 144 Pa. Superior Ct. 500. Both Selected Risks and Indemnity are bound to have the issue determined by their stipulation which is valid and binding upon both of them. See Thomas v. Bache, 155 Pa. Superior Ct. 224; Commonwealth ex rel. v. Banholzer et ux., 304 Pa. 578.

The facts involved are brief and simple and are heretofore set forth in this opinion. Selected Risks had been the compensation carrier for defendant company for approximately 19 years. The annual expiration date of its policy was October 11th. On October 7, 1955, at the request of defendant company, Indemnity issued a policy covering the activities of defendant. The fatal accident giving rise to the claim occurred on December 17, 1955. On April 12, 1956, after learning

of the instant claim, Indemnity cancelled its policy effective October 7, 1955, for the reason that it provided for duplicate coverage. The regular policy of Selected Risks was to cancel its policy upon learning that another carrier had issued a policy on the risk, but did not do so in this instance because the accident occurred prior to its being informed that Indemnity had issued its policy covering the risk. The referee found as a fact from the stipulation that:

"On October 7, 1955, the decedent's employer, Boalsburg Water Company, intended to, and did substitute The Indemnity Insurance Company of North America as its workmen's compensation insurance carrier instead of the Selected Risks Insurance Company, and your referee therefore finds that at the time of the fatal accident that occurred on December 17, 1955, the said Indemnity Insurance Company of North America was the only insurance carrier liable for the payment of compensation for compensable accidents to the employees of the said Boalsburg Water Company."

The board affirmed the referee by its published opinion on December 16, 1959, by the following language:

"Our conclusion from a study of the stipulation, a study of the briefs submitted, and of the law that pertains thereto, is that the Water Company, at the time of the fatal accident, was insured by the Indemnity Insurance Company of North America. For the reasons hereinbefore set forth, we have no other recourse but to affirm the referee's findings of fact, conclusions of law and order or award.

"The appeal of the Indemnity Insurance Company of North America is dismissed."

The exhaustive briefs of the able counsel for both carriers, as well as the research of the court, fails to disclose any appellate court cases of this State which

have disposed of the point herein involved. We are satisfied that the question raised in this appeal is a new one. Counsel for Indemnity argues strongly that the case of Eldridge v. Blue Ridge Textile Co., Inc., supra, has merit in the support of his position. This we fail to see, and we think a close analysis of the facts substantiates this point of view. In that case, Keystone was the original carrier. Hartford issued a policy through a common agent of both carriers which created double coverage. Keystone refused to cancel its policy until a date later than the date upon which the accident occurred, and the common agent then redated Hartford's new policy to begin as of the expiration date as insisted upon by Keystone. Under these circumstances, the court held, and we think properly so, that Keystone was liable. We would agree with the board that the Eldridge case has no application here and is not controlling in the instant case.

In this case, Indemnity issued a new policy four days prior to the expiration or renewal date of the policy of Selected Risks. There is nothing to indicate that it made any inquiry from defendant company or from the Workmen's Compensation Rating and Inspection Bureau whether defendant company had other compensation coverage or had been granted the privilege of self-insurance or the privilege of rejecting the Workmen's Compensation Act. The board, we think properly, held that Indemnity did little or nothing to ascertain the true situation and that it and it alone was in a position to seek the truth. Certainly, Selected Risks, who was already the carrier, would not be put to any notice and had no reason to anticipate that after 19 years of service the assured had changed carriers. Even if it had contacted the compensation bureau, it is inconceivable that the records of that department would have shown the existence of a new carrier, since only four days separated the date of

issuance of Indemnity's policy and the renewal date of the policy of Selected Risks.

The fact that Indemnity attempted to cancel its policy on April 12, 1956, effective as of October 7, 1955, after it had notice of the claim, has no bearing on this case. It is human nature to want to retreat from the firing line when the enemy is in sight and the risk is great. It is submitted that Indemnity would have insisted on the continuation of its risk had no accident occurred. The stipulation of facts indicates that Selected Risks, as a matter of policy, regularly cancels its policy when learning of the existence of another policy. This is fortified by the judicial knowledge that this is the standard practice in a free enterprise system. Selected Risks did not cancel in this instance because the claim arose before it had knowledge of duplicate coverage.

Counsel for Indemnity argues that there is no evidence in the record to indicate that defendant company *intended* to substitute it as the new carrier to replace the policy of Selected Risks. With this contention we cannot agree for two reasons. First, the parties are bound by the stipulation of facts which was entered into after due deliberation and considered judgment of counsel and, secondly, as was decided by the board, the very act of defendant in effectuating a change of insurance carrier leads us to conclude that there was an intention upon the employer to substitute a subsequent new carrier for the earlier carrier. We think this case involves a different conception or meaning of the word *intent* than that which is involved in the ordinary contract between two individuals. There, it is important to determine the intention or meeting of the minds as a fact in order to properly ascertain the meaning of the agreement. Here, the law requires an employer to carry a specific type of policy. It was, in fact, issued by Indemnity. Surely no court will now allow a

carrier to come in and contend that they did not intend to issue the policy. It would open the door to all sorts of defenses by carriers to the prejudice of the workman for whom the statute was designed to benefit. A takes careful aim and shoots B, believing B to be C. He therefore contends that he did not intend to shoot B. The matter of intention in the ordinary sense is not here involved, and we believe the board's findings are justified and proper.

Although not binding in this Commonwealth, we find considerable comfort and support for our conclusion in the case of New Amsterdam Casualty Co. v. Moss, 312 Mich. 459, 20 N. W. 2d 272, which decided a case directly on point. There defendant company honestly believed that it needed another policy of workmen's compensation insurance when it embarked on a new business enterprise, and purchased a New Amsterdam policy while it was already covered by a policy of the Phoenix Insurance Company. The court concluded, after a very able discussion, that New Amsterdam was substituted for the Phoenix policy and was the responsible carrier. This case was cited with approval in a subsequent case in Michigan by its Supreme Court in Burhans v. Central States Produce Corp., 313 Mich. 124, 20 N. W. 2d 835.

We are in complete agreement with Commissioner Noonan when he states that:

"The responsibility for the dilemma as between two carriers must rest on that carrier which, in equity and justice, would be held responsible for failure on its part to ascertain full knowledge of the water company's affairs in relation to workmen's compensation coverage. We believe without question that the responsibility was that of the Indemnity Insurance Company which could have and should have ascertained if the water company already had compensation coverage. Apparently the Indemnity Insurance Company

failed to do anything other than write the policy. As a result of this careless conduct, it finds itself one of two carriers writing the same risk, as between the two it therefore was the one responsible."

For these reasons we enter the following order:

And now, to wit, July 6, 1960, the appeal of the Indemnity Insurance Company of North America is quashed and/or dismissed, and the order of the referee and the Workmen's Compensation Board is affirmed.

And now, to wit, July 6, 1960, an exception is noted and bill sealed for the Indemnity Insurance Company of North America.