## Bundrant v. Rikal

500

*C. Dale Blair*, for appellant.

*Elmer G. Klaber*, for appellee.

SHUMAKER, P. J., June 8, 1961.—This matter is before the court on an appeal from an opinion and order of the Workmen's Compensation Board. The facts are not in dispute, and the findings of fact made by the referee and the board are not here questioned by counsel.

Victor Rikal was engaged in the trucking business and took out a workmen's compensation policy issued by the General Accident Group in the name of Victor P. Rikal, trading and doing business as Vic Rikal Trucking, effective December 1, 1958, to December 1, 1959.

During October of 1958, said Victor Rikal bought the Royal Taxi Service, then insured in the Secured Insurance Company under a policy which would expire May 8, 1959. Prior to the expiration date of said policy, Andrew Himchak, an insurance broker, submitted an application to the Insurance Office of Pittsburgh, agent for the Transit Casualty Company, and as a result the Transit Casualty Company issued to Victor Rikal, trading as Royal Taxi Service, a standard workmen's insurance compensation policy covering the period from May 8, 1959, to May 8, 1960.

Neither company knew that Victor Rikal was engaged in any other business than the one referred to

in their respective policies, and neither company knew of the existence of the other company's policy covering Victor Rikal.

Thus insured, said Victor Rikal operated his trucking business and his taxi cab business out of the same garage, where both the taxis and the trucks were serviced and repaired.

Donald R. Bundrant and others were employed as mechanics and servicemen to repair and service both types of vehicles, their services being performed in the garage or by service calls.

Separate books were kept for each business and, as a matter of convenience, the wages of the maintenance men were charged against each business for alternate weeks, rather than per work done for the particular business.

On June 4, 1959, while Donald R. Bundrant was working inside the garage on a taxicab tire, the tire exploded or "blew up," so injuring said workman that he died the following day. A claims petition was filed by Evelyn J. Bundrant, the employe's widow, for herself and children, naming the General Accident Insurance Company as insurance carrier for the employer.

This company caused to be made a party of record in the proceedings before the referee the Transit Casualty Company.

The referee, later sustained by the board, held the claim compensable and, for allowing the widow and children of the deceased employe to recover, no one has been heard to complain or object.

The troublesome problem arose as to which insurance company was liable or whether both were responsible for paying the award.

The referee held the Transit Casualty alone liable and dismissed the claim against the General Accident

Insurance Company. The Workmen's Compensation Board later affirmed the referee in his holding liable only the Transit Casualty Company. From this action of the board, the appeal to this court of common pleas was taken by the Transit Casualty Company.

The question of which company is liable, or are both, was orally argued before this court in most able fashion, and helpful briefs have been filed in support of the respective positions taken. These have been carefully considered by the court.

The precise question now before this court is properly stated as follows: Where one carrier insures a trucking risk and another carrier insures a taxicab risk, with both enterprises owned by one person but operated as distinct and separate businesses, with the cab service under a fictitious name, and with the premium in each policy predicated upon the payroll involved in each particular risk, and where the accident occurred in the business of the taxicab service, should the compensation award be made solely against the carrier which insured the taxicab risk?

The Transit Casualty Company now contends that both insurance companies are liable and that the board erred in not holding both jointly liable. It complains that the board had no legal justification for dividing the insured into two parts and making two entities of one and the same individual, namely: Rikal, the trucker, and Rikal, the taxi man.

The contention of General Accident before the referee, before the Workmen's Compensation Board and now before this court, is that by the express provisions of its policy the General Accident had no coverage for employes of Royal Taxi Service, that the accident causing Mr. Bundrant's death occurred while he was working for Royal Taxi Service, that the Transit Casualty Company policy covered the Royal Taxi Service, and,

therefore, the award should be made against Transit Casualty Company alone.

The position of the board and its conclusion appears in the opinion of the board in the following language:

"We are in accord with the decision of the Referee that Transit is alone liable for compensation payments. This determination seems to us to be fair, just and conscionable in view of the fact that Transit wrote the specific policy to cover the business in which the accident occurred."

Counsel for the Transit Casualty Company argues strenuously that the statutory law of Pennsylvania, by which workmen's compensation insurance is written in this State, imposes liability in this case on the General Accident Company which was released and relieved by the board and relies upon the following:

1. Liability is imposed on employers by the Act of June 2, 1915, P. L. 736, art. 3, sec. 302 (a), as amended, 77 PS §461, which brings employers and employes under The Workmen's Compensation Act.

2. On the necessity to secure insurance, section 305, 77 PS §501, states: "Every employer liable under this act to pay compensation shall insure the payment of compensation . . . in any insurance company . . . authorized to insure such liability in this Commonwealth . . ."

3. The type or nature of insurance required is set forth in the Insurance Company Law of May 17, 1921, P. L. 682, art. 6, sec. 651, as amended on July 2, 1953, P. L. 342, sec. 1, or 40 PS §811, which provides that every policy of insurance against liability under " 'The Workmen's Compensation Act'. . . shall contain the agreement of the insurer to pay all compensation and provide all medical, surgical, and hospital attendance for which the insured employer may become liable under such acts during the term of such insurance, and

the further agreement that, as between the insurer and any claimant under such acts, notice to the employer . . . shall be notice to and knowledge of the insurer. Such agreement shall be construed to be a direct promise to the injured employe or to the dependents of a deceased employe having a claim under such acts, and shall be enforceable by action brought in the name of such injured employe or in the name of such de‚ pendents . . ."

Counsel for the Transit Company states (by direct quotation from page 5 of his brief) :

"In short our Legislature was concerned with taking care of the beneficiaries under Workmen's Compensation and not concerned with taking care of the company that might write a policy. Therefore, they say that every policy so written shall contain the direct promise to the benficiary."

This court has examined the statutes mentioned and has no disagreement with counsel that our legislature is "not concerned with taking care of the company that might write the policy" but was rather concerned with the welfare of the beneficiary. The welfare of the beneficiary is not a matter of our concern in this case for the beneficiary is bound to recover from one insurance carrier or the other or both.

We are of the opinion that the statutory law of Pennsylvania does not determine in this case upon which company shall be placed the financial responsibility for the payment of her claim.

In this case at bar, General Accident insured a trucking business in which there were four trucks and a panel truck and four drivers with an estimated payroll of $15,000. On the other hand, Transit Casualty insured a taxicab business with seven vehicles used in taxicab service and 15 drivers with an estimated payroll of $30,000. These were separate and distinct business enterprises. They were so considered by the in-

sured, with separate sets of books for each and with separate compensation insurance policies for each.

Although fettered by a lack of Pennsylvania case law to assist or guide us, we cannot agree with counsel for the insurance company held liable that the statutory law of our Commonwealth makes the insurance companies involved coinsurers and, therefore, jointly liable.

Suppose, arguendo, that instead of two businesses of similar character, one of the transportation of human cargo and the other of inanimate materials and products, established and conducted and operated by Rikal, this man had many diversified business enterprises as many folk do. Let us assume that Rikal owned a coal mine, a restaurant, a hardware store and an outdoor theater and treated the same in every way as separate and distinct entities with different individual managers for each. For reasons he considers as good business, he patronizes his friends in the insurance business. There is nothing to prevent him from giving to various and different insurance brokers and, therefore, insurance companies, his fire, theft, liability, collision and comprehensive insurance business.

He comes finally to his law required workmen's compensation insurance. Certainly, no legislative mandate or requirement compels him to lump his compensation insurance and, for the first and only time, consider his enterprises as one and take out one policy with one company covering all employes, however and wherever employed.

There, as here, he could, and no doubt should, refrain from "putting all his eggs in one basket," compwise.

How could one compensation insurance carrier for one business be considered as coinsurer or joint insurer for all the others.

Contractually speaking, each carrier, as here, would

assume the risk of liability of death by accident or injury, employment connected, for that particular enterprise and would do so for a premium based upon the payroll of that individual business.

A carrier with a three or five employe risk for a very small premium could not in conscience be classified as an insurer or a coinsurer for all the enterprises with possible several hundred employe risk.

Counsel for Transit Casualty readily admits that without the General Accident policy on the trucking business of the insured, there would be no question as to his company's liability for the death of Donald R. Bundrant and for the payments to the dependents of decedent under and by virtue of the provisions of the Workmen's Compensation Act of Pennsylvania. It is neither argued or contended by Transit Casualty that General Accident is, under any theory, alone liable and should make all of the payments required to said dependents.

Said counsel insists, however, that there exists joint liability on the two companies, parties to this litigation, and urges the court to reverse the Workmen's Compensation Board and to make such a conclusion of law and should impose joint liability. We find no basis in law or fact for reaching such a conclusion.

As was said by Commissioner Noonan for the Workingmen's Compensation Board in his opinion in the case of Koch v. Boalsburg Water Co., which was subsequently affirmed by President Judge Campbell, of the Common Pleas Court of Centre County, Pa., when considering the same case on appeal, in his opinion dated July 6, 1960, and reported in 1 Centre 205.

". . . the Board cannot be a Solomon and decree that two carriers be jointly liable. The Board has jurisdiction to determine the general question of the liability of an insurer under the policy and whether the policy is in force or has been cancelled."

We do not consider the matter of double coverage involved in this proceedings. This is not a case where two companies for premiums paid covered and assumed the same risk. Each company assumed a separate and distinct business and accompanying risks of death or injury to employes connected with said business covered by said separate policies.

This is not a case where the insured has attempted to limit the liability of the insurer to any amount less than that for which the insured employer may be liable, in violation of the Act of May 17, 1921, P. L. 682, art. 4, secs. 651 and 653, as amended, 40 PS §§811 and 813.

It is not a case where the insured has attempted to divide or separate employes of his business and separately insure them.

Nor is this a situation where one carrier is being substituted for another.

The State of Michigan has a statute, 1929 Compiled Laws, §8460, Stat. Ann., §17.195, which provides:

"Every insurance company . . . issuing an insurance policy to cover any employer . . . shall in one and the same insurance policy, insure, cover and protect all the businesses, employees, enterprises and activities of such employer . . ."

Under this statute, the case of New Amsterdam Casualty Co. v. Moss, 312 Mich. 459, 20 N. W. 2d 272, was decided. This case was considered by the board, cited to this court and by it considered. With a factual situation similar to ours, an employer had a business fully covered by a workmen's compensation carrier. He later acquired another business and covered it with comp-insurance with another carrier. With the above-quoted statute in effect, the Supreme Court of Michigan held that the second policy in effect cancelled the first and made the second carrier liable.

It is not our impression that the Transit policy in this case cancelled the General Accident Insurance policy nor did it supersede or supplant it.

Had Donald R. Bundrant's death been trucking company connected, the General Accident Insurance Company would be held solely liable for all compensation payments due, and the Transit Casualty Company would have been relieved from all liability therefore and any part thereof.

In the opinion of this court, the referee, and later the board, correctly found that the Transit Casualty Company alone was liable as compensation carrier for Victor Rikal, trading as Royal Taxi Service.

This result appears fair, just, reasonable and equitable. The Transit Company for premiums received accepted this very type of risk. The policy written by said company expressly covered it. Said company is not now being discriminated against by holding it to its contractual obligation. It would be manifestly unfair and unjust, in the opinion of this court, to impose one-half of the liability or obligation upon the General Accident Insurance Company which never agreed to assume the risk, received no compensation or consideration therefor in the form of premiums and, indeed, did not know of the existence of the risk.

Hence, this order:

### Order

And now, June 7, 1961, the order of the Workmen's Compensation Board made in this case is affirmed, and the Transit Casualty Company is held by this court to be alone liable for the amount of the referee's award. This appeal is, therefore, dismissed.